UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **VFS US LLC** | * | **CIVIL ACTION NO.** |
| **Plaintiff,** | * | |
| vs. | * | **JUDGE** |
| **LOUISIANA LIQUID SERVICES, L.L.C.,** | * | **MAGISTRATE** |
| **FOURNERAT & TOUPS FARMS, L.L.C.,** | * | |
| **FOURNERAT FAMILY, L.L.C. and** | * | |
| **LOGAN C. FOURNERAT** | * | |
| **Defendants.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## VERIFIED COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, VFS US LLC, who files this Verified Complaint and in support thereof avers the following:

### JURISDICTION

1. This Honorable Court has jurisdiction over these proceedings pursuant to the provisions of 28 USC § 1332(a)(1) because there is complete diversity of citizenship between the parties to this action, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

### VENUE

2. Venue is proper in this district pursuant to 28 USC § 1391 because one or more defendants reside in this district and all defendants are residents of Louisiana.

## THE PARTIES

3. Plaintiff, VFS US LLC[1] is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in North Carolina. The sole member of Plaintiff VFS US LLC is a citizen of the State of Delaware.

4. Made Defendant herein is Louisiana Liquid Services, L.L.C. ("Louisiana Liquid"), a Louisiana limited liability company authorized to do and doing business in the State of Louisiana, with its domicile address in Eunice, Louisiana. Upon information and belief, all members of Louisiana Liquid are citizens of the State of Louisiana.

5. Made Defendant herein is Fournerat & Toups Farms, L.L.C. ("Fournerat Farms"), a Louisiana limited liability company authorized to do and doing business in the State of Louisiana, with its domicile address in Basile, Louisiana. Upon information and belief, all members of Fournerat Farms are citizens of the State of Louisiana.

6. Made Defendant herein is Fournerat Family, L.L.C. ("Fournerat Family"), a Louisiana limited liability company authorized to do and doing business in the State of Louisiana, with its domicile address in Eunice, Louisiana. Upon information and belief, all members of Fournerat Family are citizens of the State of Louisiana.

7. Made Defendant herein is Logan C. Fournerat, a member of Louisiana Liquid and Fournerat Farms, and a person of the full age of majority who upon information and belief resides in the Parish of Evangeline, State of Louisiana.

## SUMMARY OF THE CASE

8. Louisiana Liquid entered into contracts with Plaintiff, in the form of a Master Loan and Security Agreement and related Promissory Notes, for the purchase of commercial

---

[1] VFS US LLC does business under the trade names Mack Financial Services and Volvo Financial Services.

equipment ("Louisiana Liquid Agreements").  Fournerat Farms, Fournerat Family, and Logan Fournerat executed a Continuing Guaranty in which they guaranteed full, prompt and complete payment of all obligations due to Plaintiff from Louisiana Liquid.  Defendants have defaulted on these obligations.

9. Louisiana Crane & Construction, L.L.C. ("Louisiana Crane") entered into five (5) contracts with Plaintiff for the purchase of commercial equipment ("Louisiana Crane Agreements").  Louisiana Crane has since filed for Chapter 11 bankruptcy, and is not made a party to this action.[2]  Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat executed a Continuing Guaranty in which they guaranteed full, prompt and complete payment of all obligations due to Plaintiff from Louisiana Crane.  Defendants have defaulted on these obligations.

## LOUISIANA LIQUID AGREEMENTS

10. On or about June 30, 2014, Louisiana Liquid entered into a Master Loan and Security Agreement with Plaintiff for the borrowing of proceeds to be used by Louisiana Liquid for the purchase of commercial equipment ("Master Agreement").  Each advance of proceeds under the Master Agreement was to be in the form of a schedule including a Promissory Note.  A copy of the Master Agreement is included in the attached as Exhibit "A," the terms and conditions of which are incorporated herein by reference.

### Secured Promissory Note. No. 1

11. On or about or about June 30, 2014, Louisiana Liquid entered into a Promissory Note with Plaintiff to finance the purchase of twenty (20) 2014 Dragon 130 BBL units.  ("Note 1").  The original principal sum financed totaled EIGHT HUNDRED FIFTEEN THOUSAND

---

[2] *In re Louisiana Crane & Construction, L.L.C.*, Case No. 16-50876 (W.D.La.).

3

SIX HUNDRED FIFTY-ONE DOLLARS AND 00/100 ($815,651.00). Pursuant to Note 1, Louisiana Liquid was to pay sixty (60) monthly installments, in the amount of SIXTEEN THOUSAND ONE HUNDRED THIRTY-ONE DOLLARS AND 63/100 ($16,131.63). A copy of Note 1 is included in Exhibit "A," the terms and conditions of which are incorporated herein by reference.

12. In order to secure Louisiana Liquid's full and complete payment and performance under the Master Agreement, Note 1, and all other related documents, Louisiana Liquid granted to Plaintiff a security interest in and to the "Equipment and such other equipment and goods as described on the Schedules now and hereafter to be attached to this Agreement." *See* Exhibit A, Master Agreement at ¶ 2. A copy of the Schedule listing the twenty (20) 2014 Dragon 130 BBL units is included in Exhibit "A," the terms and conditions of which are incorporated herein by reference.

13. The security interest further includes "all attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory notes, warranties, service contracts, documents, records now or hereafter arising from the Equipment (collectively, the "Collateral")." *See* Exhibit A, Master Agreement at ¶ 2.

## Secured Promissory Note. No. 2

14. On or about June 30, 2014, Louisiana Liquid entered into a Promissory Note with Plaintiff to finance the purchase of twenty (20) 2015 Mack CHU613 units. ("Note 2"). The original principal sum financed totaled TWO MILLION THREE HUNDRED NINETEEN

THOUSAND FIVE HUNDRED THIRTY-SIX DOLLARS AND 60/100 ($2,319,536.60). Pursuant to the Note 2, Louisiana Liquid was to pay sixty (60) monthly installments, in the amount of FORTY-FIVE THOUSAND EIGHT HUNDRED SEVENTY-FOUR DOLLARS AND 91/100 ($45,874.91). A copy of Note 2 is included in Exhibit "A," the terms and conditions of which are incorporated herein by reference.

15. In order to secure Louisiana Liquid's full and complete payment and performance under the Master Agreement, Note 2, and all other related documents, Louisiana Liquid granted to Plaintiff a security interest in and to the "Equipment and such other equipment and goods as described on the Schedules now and hereafter to be attached to this Agreement." *See* Exhibit A, Master Agreement at ¶ 2. A copy of the Schedule listing the twenty (20) 2015 Mack CHU613 units is included in Exhibit "A," the terms and conditions of which are incorporated herein by reference.

16. The security interest further includes "all attachments, accessions, replacements, parts, proceeds (including insurance proceeds), income, earnings, accounts, rights to payment (including monetary obligations, whether or not earned by performance), secondary obligations incurred or to be incurred, chattel paper, electronic chattel paper, general intangibles, payment intangibles, promissory notes, warranties, service contracts, documents, records now or hereafter arising from the Equipment (collectively, the "Collateral")." *See* Exhibit A, Master Agreement at ¶ 2.

The Continuing Guaranty

17. On or about June 30, 2014, Defendants Fournerat Farms, Fournerat Family, and Logan Fournerat executed a Continuing Guaranty pursuant to which they guaranteed the "full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes,

loans, indebtedness, leases, or lease payments that shall at any time be due and payable to" Plaintiff from Louisiana Liquid.[3] A copy of the Continuing Guaranty is attached as Exhibit "B," the terms and conditions of which are incorporated herein by reference.

## LOUISIANA CRANE AGREEMENTS

18. On or about June 10, 2013, Louisiana Crane entered into a Direct Loan Contract with Plaintiff to finance the purchase of eight (8) 2013 Dragon 130 BBL units. ("**Contract 1**") The original principal sum financed totaled THREE HUNDRED SIXTY-TWO THOUSAND SIX HUNDRED SIXTY-EIGHT DOLLARS AND 28/100 ($362,668.28). Pursuant to the Contract, Louisiana Crane was to pay sixty (60) monthly installments, in the amount of SEVEN THOUSAND THREE HUNDRED EIGHT DOLLARS AND 56/100 ($7,308.56). A copy of Contract 1 is attached as Exhibit "C," the terms and conditions of which are incorporated herein by reference.

19. On or about June 10, 2013, Louisiana Crane entered into a Direct Loan Contract with Plaintiff to finance the purchase of eight (8) 2014 Mack CHU613 units ("**Contract 2**"). The original principal sum financed totaled ONE MILLION SIX THOUSAND THREE HUNDRED TWENTY DOLLARS AND 28/100 ($1,006,320.28). Pursuant to the Contract, Louisiana Crane was to pay sixty (60) monthly installments, in the amount of TWENTY THOUSAND TWO HUNDRED SEVENTY-NINE DOLLARS AND 56/100 ($20,279.56). A copy of Contract 2 is attached as Exhibit "D," the terms and conditions of which are incorporated herein by reference.

20. On or about June 27, 2013, Louisiana Crane entered into a Direct Loan Contract with Plaintiff to finance the purchase of twelve (12) 2014 Mack CHU613 units ("**Contract 3**").

---

[3] Louisiana Crane was also a signatory to the Continuing Guaranty.

The original principal sum financed totaled ONE MILLION FIVE HUNDRED NINE THOUSAND TWO HUNDRED EIGHTY-TWO DOLLARS AND 92/100 ($1,509,282.92). Pursuant to the Contract, Louisiana Crane was to pay sixty (60) monthly installments, in the amount of THIRTY THOUSAND FIVE HUNDRED SIX DOLLARS AND 91/100 ($30,506.91). A copy of Contract 3 is attached as Exhibit "E," the terms and conditions of which are incorporated herein by reference.

21. On or about July 10, 2013, Louisiana Crane entered into a Direct Loan Contract with Plaintiff to finance the purchase of two (2) 2014 Mack CHU613 units ("**Contract 4**"). The original principal sum financed totaled TWO HUNDRED FORTY-SEVEN THOUSAND THREE HUDNRED NINETY-SIX DOLLARS AND 32/100 ($247,396.32). Pursuant to the Contract, Louisiana Crane was to pay sixty (60) monthly installments, in the amount of FIVE THOUSAND ONE DOLLARS AND 66/100 ($5,001.66). A copy of Contract 4 is attached as Exhibit "F," the terms and conditions of which are incorporated herein by reference.

22. On or about July 18, 2014, Louisiana Crane entered into a Master Loan and Security Agreement, with a Secured Promissory Note, with Plaintiff to finance the purchase of two (2) 2015 Mack CHU613 units and three (3) 2013 Mack CHU613 units ("**Contract 5**"). The original principal sum financed totaled FIVE HUNDRED TWENTY-NINE THOUSAND ONE HUNDRED EIGHTY-FOUR DOLLARS AND 23/100 ($529,184.23). Pursuant to the Contract, Louisiana Crane was to pay sixty (60) monthly installments, in the amount of TEN THOUSAND FOUR HUNDRED SIXTY-SIX DOLLARS AND 00/100 ($10,466.00). A copy of Contract 5 is attached as Exhibit "G," the terms and conditions of which are incorporated herein by reference.

### The Continuing Guaranty

23. On or about June 10, 2013 Defendants Louisiana Liquid, Fournerat Farms, Logan Fournerat, and Joseph Toups[4] executed a Continuing Guaranty pursuant to which they guaranteed the "full, prompt, and complete payment and performance of all obligations of all sums, moneys, notes, loans, indebtedness, leases, or lease payments that shall at any time be due and payable to" Plaintiff from Louisiana Crane. Fournerat Family signed as an additional guarantor on or about July 18, 2014. A copy of the Continuing Guaranty is attached as Exhibit "H," the terms and conditions of which are incorporated herein by reference.

24. On November 3, 2015, Fournerat Family entered into a Reaffirmation of Guaranty in favor of Plaintiff whereby Fournerat Family reaffirmed all of its liability and obligations under and pursuant to the July 18, 2014 Guaranty. A copy of the Reaffirmation of Guaranty is attached as Exhibit "I," the terms and conditions of which are incorporated herein by reference.

### The Modification Agreements

25. On or about May 17, 2016, Louisiana Crane entered into a Modification Agreement in connection with Contract 4. At the time of the Modification Agreement, Louisiana Crane owed Plaintiff delinquent payments and late fees of SEVEN THOUSAND TWO DOLLARS AND 30/100 ($7,002.30) under Contract 4. The agreement modified Contract 4 as follows: commencing on May 25, 2016, Louisiana Crane was to pay one (1) monthly installment at $0.00, followed by twenty-seven (27) consecutive monthly installments in the amount of FIVE THOUSAND THIRTY-THREE DOLLARS AND 93/100 ($5,033.93). Pursuant to the agreement, Louisiana Crane ratified and affirmed Contract 4, which remained in full force and

---

[4] Joseph Toups obtained a Release of Guaranty from Plaintiff on July 14, 2014.

effect as expressly modified in the Agreement. Signing as Guarantors to the Modification Agreement were Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat. The Modification Agreement to Contract 4 is attached as Exhibit "J."

26. On or about May 17, 2016, Louisiana Crane entered into a Modification Agreement in connection with Contract 5. At the time of the Modification Agreement, Louisiana Crane owed Plaintiff delinquent payments and late fees of FOURTEEN THOUSAND SIX HUNDRED FIFTY-TWO DOLLARS AND 40/100 ($14,652.40) under Contract 5. The agreement modified Contract 5 as follows: commencing on May 18, 2016, Louisiana Crane was to pay one (1) monthly installment at $0.00, followed by thirty-nine (39) consecutive monthly installments in the amount of TEN THOUSAND FIVE HUNDRED TWENTY-SIX DOLLARS AND 62/100 ($10,526.62). Pursuant to the agreement, Louisiana Crane ratified and affirmed Contract 5, which remained in full force and effect as expressly modified in the Agreement. Signing as Guarantors to the Modification Agreement were Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat. The Modification Agreement to Contract 5 is attached as Exhibit "K."

## THE DEFAULTS

### Louisiana Liquid Agreements

27. Pursuant to the terms of the Master Agreement, an "Event of Default" includes, but is not limited to, the following: "(i) the occurrence of an Event of Default under any Note or any other of the Loan Documents; . . . [and] (v) commencement of any case under the Bankruptcy Code (Title 11 of the United States Code) or any similar proceeding under any federal, state, or foreign law by or against Borrower or any guarantor." *See* Master Agreement included in Exhibit "A" at ¶8, "Events of Default." An Event of Default under the Promissory

Notes includes the failure by the Borrow or Guarantors to pay any amount due under the Loan Documents.  *See* Notes 1 and 2 included in Exhibit "A" at "Events of Default."

28.     Pursuant to the terms of the Master Agreement, Defendants agreed that "[u]pon the occurrence of an Event of Default . . . Lender shall have the following rights and remedies: (i) Lender may, at its option, declare all of the Obligations immediately due and payable; (ii) Lender may, without notice or demand or legal process, take possession of the Collateral wherever found and, for this purpose, may enter upon the property occupied or under the control of Borrower; (iii) Lender may require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender; (iv) Lender, at the expense of Borrower, may make repairs deemed necessary or desirable to the Collateral; [and] (v) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale in the wholesale or retail market, with or without notice to the Borrower."  *See* Master Agreement included in Exhibit "A" at ¶9, "Rights and Remedies of Lender."

29.     Defendant Louisiana Liquid has defaulted on its indebtedness to Plaintiff by failing to make timely payments under Note 1.  Pursuant to the rights and remedies afforded Plaintiff under the Master Agreement, all twenty (20) units covered under Note 1 have been repossessed or voluntarily surrendered.  Following disposition of the units and as of the filing of this Complaint, there remains a deficiency balance for these units in the amount of FOUR HUNDRED NINETY-SEVEN THOUSAND FOUR HUNDRED TWENTY-ONE DOLLARS AND 65/100 ($497,421.65).

30.     Defendant Louisiana Liquid has further defaulted on its indebtedness to Plaintiff by failing to make timely payments under Note 2.  Pursuant to the rights and remedies afforded Plaintiff under the Master Agreement, all twenty (20) units covered under Note 2 have been

repossessed or voluntarily surrendered. Nineteen (19) of the twenty (20) units were disposed of, and there is no remaining deficiency balance for these units. The one remaining unit, VIN 1M2AN07Y2FM018871, was damaged and unable to be sold. The unit has a payoff balance remaining in the amount of ONE HUNDRED ONE THOUSAND NINE HUNDRED TWENTY-SIX DOLLARS AND 71/100 ($101,926.71). Louisiana Liquid has failed to make payment on this unit for a period of more than ten (10) months.

31. Defendants Fournerat Farms, Fournerat Family, and Logan Fournerat have defaulted on their indebtedness to Plaintiff by failing to make timely payments pursuant to the Continuing Guaranty covering Notes 1 and 2. Specifically, as of the filing of this Complaint, Plaintiff has not received any payment from Defendants Fournerat Farms, Fournerat Family, and Logan Fournerat for the deficiency balance owed under Note 1. Nor has Plaintiff received any payment from Defendants Fournerat Farms, Fournerat Family, and Logan Fournerat for a period of more than ten (10) months for the payoff amount owed under Note 2.

32. As of the filing of this Complaint, Defendants are justly and truly indebted unto Plaintiff *in solido* for the deficiency balance remaining under Note 1 and the payoff amount remaining under Note 2, totaling FIVE HUNDRED NINETY-NINE THOUSAND THREE HUNDRED FORTY-EIGHT DOLLARS AND 36/100 ($599,348.36), plus interest, applicable late charges, attorneys' fees and all costs of these proceedings.

33. Under the terms of the Promissory Notes, Defendants agreed "to pay on demand all reasonable external and internal costs, expenses, and fees (including reasonable attorneys' fees and expenses) of Lender in enforcing the Loan Documents and the rights and remedies of Lender under the Loan Documents and applicable law, regardless of whether any legal action or proceeding is instigated. *See* Notes 1 and 2 included in Exhibit "A" at "Costs, Expenses, and

Fees." The Promissory Notes also provide late charges "[i]f any payment or principal and interest or any other indebtedness is not received in full by Lender within fifteen (15) days after its due date." *Id*. at "Late Charges."

34. In the Promissory Notes, Defendants further agreed that they waive "to the fullest extent permitted by law, presentment, notice of dishonor, protest, notice of protest, notice of intent to accelerate, notice of acceleration, and all other notices or demands of any kind (except notices specifically provided for in the Loan Documents)." *Id*. at "Waivers."

35. By filing suit, Plaintiff has exercised its option to declare the balance of the sums due under the Louisiana Liquid Agreements, including principal, interest, attorneys' fees, collection expenses and other applicable charges to be presently due and payable. Plaintiff specifically reserves any and all rights it may have to enforce any and all other security rights it may have.

<u>The Louisiana Crane Agreements</u>

36. Pursuant to the terms of the Contracts, an "Event of Default" occurs when the "(a) Borrower fails to pay any installment to Lender in full when due or fails to make any other payment of the indebtedness or any other amount due under any other agreement with Lender or any affiliate; . . . [or] (e) a petition in bankruptcy is filed by or against Borrower or any guarantor." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Events of Default." *See also* Contract 5 (Master Loan) (Exhibit "G") at ¶ 8, "Events of Default" (containing similar language).

37. Pursuant to the terms of the Contracts, Defendants agreed that "[u]pon the occurrence of an Event of Default . . . Lender may (i) declare this Contract to be in default; (ii) at its option, declare all of the indebtedness and other debts secured by this Contract immediately due and payable; (iii) without notice or demand or legal process, take possession of the Collateral

wherever located and, for this purpose, may enter upon the property occupied or under the control of Borrower; (iv) require Borrower to assemble the Collateral and make it available to Lender at a place to be designated by Lender; (v) at the expense of Borrower, make repairs to the Equipment deemed necessary by Lender; and (vi) with or without obtaining possession of the Collateral or any part thereof, sell the same at a public or private sale(s) in the wholesale or retail market, with or without notice to the Borrower." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Remedies." *See also* Contract 5 (Master Loan) (Exhibit "G") at ¶ 9, "Rights and Remedies of Lender" (containing similar language).

38. Under the terms of the Contracts, "[t]he proceeds of any sale(s), after deducting all expenses and costs (including reasonable attorneys' fees and expenses, shall be applied to the indebtedness or any other indebtedness of Borrower to Lender or any affiliate, and any surplus remaining shall be paid to Borrower or to any other party who may be legally entitled to such surplus." Defendants further agreed that they "are liable for and will promptly pay any deficiency resulting from any disposition of Collateral after default." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Remedies." *See also* Contract 5 (Master Loan) (Exhibit "G") at ¶ 9 "Rights and Remedies of Lender" (containing similar language).

39. Non-party Louisiana Crane defaulted on its indebtedness to Plaintiff by failing to make timely payments under Contract 1. Pursuant to the rights and remedies afforded Plaintiff under the Contracts, seven (7) of the eight (8) units covered under Contract 1 have been repossessed or voluntarily surrendered. Following disposition of the units and as of the filing of this Complaint, there remains a deficiency balance for these units in the amount of TWO HUNDRED FOUR THOUSAND EIGHT HUNDRED SEVEN DOLLARS AND 75/100 ($204,807.75). The remaining unit was wrecked and the balance written off.

40. Non-party Louisiana Crane defaulted on its indebtedness to Plaintiff by failing to make timely payments under Contract 2. Pursuant to the rights and remedies afforded Plaintiff under the Contracts, seven (7) out of the eight (8) units covered under Contract 2 have been repossessed, voluntarily surrendered, or otherwise disposed of. Following disposition of the units and as of the filing of this Complaint, there remains a deficiency balance for these units in the amount of TWO HUNDRED TWENTY-THREE THOUSAND SEVEN HUNDRED TWENTY-ONE DOLLARS AND 56/100 ($223,721.56). The one remaining unit under Contract 2, VIN 1M2AN07Y0EM016051, has a payoff balance remaining in the amount of EIGHTY-EIGHT THOUSAND ONE HUNDRED NINETY-FIVE DOLLARS AND 07/100 ($88,195.07). Louisiana Crane has failed to make a payment on this unit for a period of more than twelve (12) months.

41. Non-party Louisiana Crane defaulted on its indebtedness to Plaintiff by failing to make timely payments under Contract 3. Pursuant to the rights and remedies afforded Plaintiff under the Contracts, all twelve (12) units covered under Contract 3 have been repossessed or voluntarily surrendered. Following disposition of the units and as of the filing of this Complaint, there remains a deficiency balance for these units in the amount of FOUR HUNDRED EIGHTY THOUSAND THREE HUNDRED SEVENTY-SEVEN DOLLARS AND 62/100 ($480,377.62).

42. Non-party Louisiana Crane defaulted on its indebtedness to Plaintiff by failing to make timely payments under Contract 4 for a period of more than four (4) months. As of the filing of this Complaint, the two (2) units covered under Contract 4 have a payoff balance remaining in the amount of ONE HUNDRED TWENTY-THREE THOUSAND NINE HUNDRED NINETY-ONE DOLLARS AND 24/100 ($123,991.24).

43. Non-party Louisiana Crane defaulted on its indebtedness to Plaintiff by failing to make timely payments under Contract 5 for a period of more than four (4) months. As of the filing of this Complaint, the five (5) units covered under Contract 5 have a payoff balance remaining in the amount of THREE HUNDRED SIXTY-EIGHT THOUSAND FIVE HUNDRED TWENTY DOLLARS AND 39/100 ($368,520.39).

44. Defendants Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat have defaulted on their indebtedness to Plaintiff by failing to make timely payments pursuant to the Continuing Guaranty and Modification Agreements. Specifically, as of the filing of this Complaint, Plaintiff has not received any payment from Defendants Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat pursuant to the Continuing Guaranty for the deficiency balances owed under Contracts 1, 2, and 3. Nor has Plaintiff received any payment from Defendants Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat pursuant to the Continuing Guaranty for a period of more than twelve (12) months for the payoff amount owed under Contract 2, and a period of more than four (4) months for the payoff amounts owed under Contracts 4 and 5.

45. As of the filing of this Complaint, Defendants are justly and truly indebted unto Plaintiff *in solido* for the deficiency balances owed under Contracts 1, 2, and 3, and the payoff balances remaining under Contracts 2, 4, and 5, totaling ONE MILLION FOUR HUNDRED EIGHTY-NINE THOUSAND SIX HUNDRED THIRTEEN DOLLARS AND 63/100 ($1,489,613.63), plus interest, applicable late charges, attorneys' fees and all costs of these proceedings.

46. Under the terms of the Contracts, Defendants further agreed "to pay on demand all reasonable attorneys' fees and all other costs and expenses which may be incurred by Lender

15

in the enforcement of this Contract or in any way arising out of the protection, assertion, or enforcement of this Contract, whether or not suit is brought." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Miscellaneous." *See also* Contract 5 (Promissory Note) (Exhibit "G") at "Costs, Expenses, and Fees" (containing similar language). The Contracts also provide late charges "for each installment not received in full in immediately good funds within fifteen (15) days of its due date." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Late Charge and Check Charge." *See also* Contract 5 (Promissory Note) (Exhibit "G") at "Late Charges" (containing similar language).

47. In the Contracts, Defendants further agreed that they waive "all exemptions, acceptances, presentment, demand for payment, notice of non-payment, protest, notice of protest, notice of dishonor, notice of intent to accelerate, notice of acceleration, and all other notices in connection with this Contract, filing of suit, and diligence in collecting the Indebtedness or enforcing any provision of this Contract." *See* Contracts 1 – 4 (Exhibits "C" – "F") at "Miscellaneous." *See also* Contract 5 (Promissory Note) (Exhibit "G") at "Waivers" (containing similar language).

48. By filing suit, Plaintiff has exercised its option to declare the balance of the sums due under the Louisiana Crane Agreements, including principal, interest, attorneys' fees, collection expenses and other applicable charges to be presently due and payable. Plaintiff specifically reserves any and all rights it may have to enforce any and all other security rights it may have.

**PRAYER FOR RELIEF**

**WHEREFORE**, the premises and the annexed documents considered, Plaintiff VFS US LLC prays that Defendants be served with a copy of these pleadings and that they be duly cited to appear and to answer same and that after all legal delays and due proceedings had that there be

judgment rendered in favor of Plaintiff and against Defendant Louisiana Liquid as borrower, and Defendants Fournerat Farms, Fournerat Family, and Logan Fournerat, as Guarantors, under the Louisiana Liquid Agreements, *in solido*, for the sum of FIVE HUNDRED NINETY-NINE THOUSAND THREE HUNDRED FORTY-EIGHT DOLLARS AND 36/100 ($599,348.36), plus interest, applicable late charges, attorneys' fees and all costs of these proceedings plus interest, applicable late charges, attorneys' fees and all other costs of these proceedings;

**PLAINTIFF FURTHER PRAYS** that there be judgment rendered in favor of Plaintiff and against Defendants Louisiana Liquid, Fournerat Farms, Fournerat Family, and Logan Fournerat, as Guarantors under the Louisiana Crane Agreements, *in solido*, for the sum of ONE MILLION FOUR HUNDRED EIGHTY-NINE THOUSAND SIX HUNDRED THIRTEEN DOLLARS AND 63/100 ($1,489,613.63), plus interest, applicable late charges, attorneys' fees and all costs of these proceedings plus interest, applicable late charges, attorneys' fees and all other costs of these proceedings; and

**PLAINTIFF FINALLY PRAYS** for such other and further relief to which it may be entitled under the law.

        Respectfully submitted,

        **ADAMS AND REESE LLP**

By: /s/ *L. Cole Callihan*
    **GREGORY F. ROUCHELL (#28746)**
    **L. COLE CALLIHAN (#33756)**
    4500 One Shell Square
    New Orleans, LA 70139
    Phone: (504) 581-3234
    Gregory.Rouchell@arlaw.com
    Cole.Callihan@arlaw.com
    *Attorneys for Plaintiff*